## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **AMNERYS ANNETTE RIVERA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Civil Action No. 2008-0020** |
| | ) | |
| **JOSEPH SHARP,** | ) | |
| **CHOICE COMMUNICATIONS, LLC, and** | ) | |
| **ATLANTIC TELE-NETWORK, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Mary Faith Carpenter, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Charles E. Engeman, Esq.,**
**Adam G. Christian, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion for Summary Judgment to Enforce Settlement Agreement" ("Defendants' Motion to Enforce Settlement") (Dkt. No. 132) and accompanying Memorandum in Support (Dkt. No. 133) filed by Defendants Joseph Sharp, Choice Communications, LLC, and Atlantic Tele-Network, Inc. (collectively "Defendants"); Plaintiff Amnerys Annette Rivera's ("Plaintiff") "Response to Defendants' Motion for Summary Judgment to Enforce Settlement" (Dkt. No. 140); and Defendants' Reply in support of their Motion to Enforce Settlement (Dkt. No. 143).

Also before the Court is Plaintiff's "Motion to Enforce Settlement and for Award of Costs and Fees and Interest" ("Plaintiff's Second Motion to Enforce Settlement") (Dkt. No. 87); Defendants' "Opposition to Plaintiff's Motion to Enforce Settlement and for Award of Costs and Fees and Interest" (Dkt. No. 89); and Plaintiff's Reply in support of her Second Motion to Enforce Settlement (Dkt No. 93).

For the reasons discussed herein, the Court will deny Defendants' Motion to Enforce Settlement and grant in part Plaintiff's Second Motion to Enforce Settlement.

## I.   PROCEDURAL HISTORY

In 2008, Plaintiff filed a Complaint with this Court asserting employment discrimination claims against Choice Communications, LLC and Atlantic Tele-Network, Inc. under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Virgin Islands statutes, 10 V.I.C. §§ 1-10 and 62, *et seq.*, along with wrongful discharge, contract, and tort claims against all Defendants. (Dkt. No. 1). The case was referred to mediation on July 8, 2009. (Dkt. No. 67). A Mediation Report dated September 25, 2009 was filed with the Court by Mediator Henry C. Smock, Esq. (Dkt. No. 78). The Mediation Report confirmed that: a mediation conference was held on September 2, 2009; counsel for the parties were present for the mediation conference; and the conflict between the parties was completely resolved as a result of the mediation, with the parties to submit a stipulation or notice of dismissal to the Court. *Id.*

Upon receipt of the Mediation Report, Magistrate Judge George W. Cannon, Jr., ordered the parties to file a stipulation of dismissal within 30 days. (Dkt. No. 79). When the parties failed to comply with the 30-day deadline for submission of the stipulation of dismissal, the Magistrate Judge entered an Order dismissing the case administratively with prejudice ("Order of Dismissal"). (Dkt. No. 80).

On November 25, 2009, Plaintiff filed an unsealed "Motion to Enforce Settlement" ("First Motion to Enforce Settlement") on the Court's Case Management/Electronic Case Files ("CM/ECF") system. (Dkt. No. 81-1).[1] On December 4, 2009, Plaintiff moved to withdraw the First Motion to Enforce. (Dkt. No. 82). However, because Plaintiff did not seek to have the motion sealed, the First Motion to Enforce Settlement remained publicly accessible on CM/ECF until February 26, 2010, when it was sealed by the Court upon motion by Plaintiff. (Dkt. Nos. 83, 84).

On March 23, 2010, Plaintiff filed a second unsealed motion to enforce settlement on the Court's CM/ECF system. (Dkt. No. 85). Plaintiff moved the same day to seal the motion. (Dkt. No. 86). However, the Second Motion to Enforce Settlement remained publicly available on the CM/ECF system until March 29, 2010.

Magistrate Judge Cannon subsequently denied Plaintiff's Second Motion to Enforce Settlement finding that Plaintiff had "materially breached the settlement agreement without the ability to cure her breach . . . [t]herefore, Defendants are discharged from their duties under the agreement." (Dkt. No. 98 at 11-12). Plaintiff then appealed the Magistrate Judge's Order denying her Second Motion to Enforce Settlement. (Dkt. No. 100).

On July 24, 2018, the Court granted Plaintiff's appeal in part, concluding that the Magistrate Judge had exceeded his authority under the Federal Magistrates Act by: (1) dismissing the case *sua sponte* following the parties' failure to comply with a Court-ordered deadline for the submission of a stipulation of dismissal after the parties reached a settlement agreement; and (2) ruling on the merits of Plaintiff's Second Motion to Enforce Settlement. (Dkt. No. 129 at 7-12). The Court therefore vacated the Magistrate Judge's Order of Dismissal (Dkt. No. 80), and

---

[1] The First Motion to Enforce Settlement was attached as an exhibit to a "Notice of Filing." (Dkt. No. 81).

considered *de novo* the question whether dismissal of the case was appropriate in light of the parties' failure to file a stipulation of dismissal. (Dkt. No. 129 at 8). Because the Court determined that dismissal of the case was inappropriate under the circumstances, the Court concluded that the case would remain on the Court's docket. *Id.* at 8-9. However, the Court found that it had no subject matter jurisdiction over the enforcement of a settlement agreement. *Id.* at 11-12.

Defendants then filed their Motion to Enforce Settlement. In their Motion, Defendants moved pursuant to Fed. R. Civ. P. 56 for the Court to declare that: "1) the confidentiality clause in the settlement agreement is valid and enforceable; 2) Plaintiff breached the confidentiality clause by filing two unsealed motions to enforce settlement agreement; 3) Defendants are excused from paying any sums to Plaintiff due to her breach of the confidentiality clause; and 4) this case is dismissed with prejudice." (Dkt. No. 132 at 1). Additionally, Defendants argued that the Court retained subject matter jurisdiction to enforce a settlement agreement. (Dkt. No. 133 at 5-7). Plaintiff filed her Opposition on October 17, 2018 (Dkt. No. 140), and Defendants filed their Reply on October 31, 2018 (Dkt. No. 143).

The Court then issued a Memorandum Opinion and Order finding that its prior determination that it lacked subject matter jurisdiction over the enforcement of the parties' settlement agreement in this case was in error. (Dkt. No. 145 at 3-4). The Court vacated in part its July 24, 2018 Order, as it related to the Court's finding that it lacked subject matter jurisdiction to enforce the parties' settlement agreement, and as it related to the Court's denial of Plaintiff's Second Motion to Enforce Settlement. *Id.* at 5.

Presently pending before the Court is Plaintiff's Second Motion to Enforce Settlement as well as the portions of Defendants' Motion to Enforce Settlement unrelated to the issue of the

Court's subject matter jurisdiction. The Court held a hearing on January 12, 2021 on the two motions. (Dkt. No. 152).

## II.   APPLICABLE LEGAL PRINCIPLES

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, on the uncontroverted facts, it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Nicini v. Morra*, 212 F.3d 798, 805-806 (3d Cir. 2000) (en banc) ("Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial" and "may not rest upon mere allegations or denials of his pleadings." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268-269 (3d Cir. 2014) (quoting *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c).

In reviewing a summary judgment motion, the district court is required to view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Curto v. A Country Place Condominium Ass'n, Inc.*, 921 F.3d 405, 409 (3d Cir. 2019) (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018)) (internal quotation marks omitted); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014). The role of the court is to "determine whether there is a genuine issue for trial." *Stiegel v. Peters Twp.*, 600 Fed. App'x 60, 63 (3d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986)) (internal quotation marks omitted). A genuine issue of material fact exists when "the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Pearson v. Prison Health Service*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)) (internal quotation marks omitted).

The Third Circuit has likened the standard for evaluating a motion to enforce a settlement agreement to the standard for a motion for summary judgment:

> [W]hether there was any disputed issue of material fact as to the validity of the settlement agreement[] . . . is similar to that which any court must address when ruling on a motion for summary judgment. . . . The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same -- both deprive a party of his right to be heard in the litigation.

*Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991).

## III.   DISCUSSION

### A.   Defendants' Motion to Enforce Settlement Agreement

#### 1.   Undisputed Facts[2]

On March 13, 2008, Plaintiff filed the Complaint in this action. (Dkt. Nos. 1; 134 at ¶ 1; 141 at 1, 8; 144 at ¶ 1). On November 3, 2008, the Court referred the case to mediation. (Dkt. Nos. 37; 134 at ¶ 2; 141 at 9).

On September 2, 2009, a Court-ordered Mediation session was held before Mediator Henry Smock, Esq. (Dkt. Nos. 78; 134 at ¶ 3; 141 at 1-2, 9).[3] The parties reached an agreement sometime

---

[2] While the parties have submitted a number of additional facts and documentary evidence, the Court has recited only those undisputed facts and referenced only those exhibits that it has found necessary for the resolution of the matter at issue. In addition, the Court has addressed only those objections related to the identified facts and exhibits.

[3] Defendants state that it is undisputed that "[a] mediation session convened on September 2, 2009, and the case settled, after post-mediation discussions, on or about September 8, 2009." (Dkt. No. 134 at ¶ 3). However, Defendants object to Plaintiff's statement, supported by exhibits that, on September 2, 2009, a "Court-ordered Mediation conference was held between the parties with

in September 2009. (Dkt. Nos. 134 at ¶ 3; 141 at 1-2, 9; 144 at ¶ 3).[4] On September 30, 2009, the Mediator filed a Report of Mediation with the Court stating that "[t]he conflict has been completely resolved. The parties are submitting a Stipulation Agreement and/or Notice of Dismissal." (Dkt. Nos. 78; 134 at ¶ 4; 141 at 2, 9). Based on the Report of Mediation, Magistrate Judge Cannon issued an Order closing the case and ordering that the parties file a stipulation of dismissal within 30 days. (Dkt. Nos. 79; 134 at ¶ 5; 141 at 2, 9-10; 144 at ¶ 4).

Throughout October the parties exchanged drafts of a written Mutual Release Agreement ("MRA"). (Dkt. Nos. 141 at 2; 144 at ¶¶ 5, 6, 7). On November 17, 2009, Magistrate Judge Cannon issued an order administratively dismissing the case because the parties had not filed a stipulation of dismissal. (Dkt. Nos. 80; 134 at ¶ 6; 141 at 3; 144 at ¶ 8). On November 25, 2009, Plaintiff filed her First Motion to Enforce Settlement on the public docket. (Dkt. Nos. 81-1; 134 at ¶ 8; 141 at 11). On November 30, 2009 and December 3, 2009, Defendants' counsel emailed Plaintiff's counsel regarding the unsealed First Motion to Enforce Settlement, stating that it was in violation

---

Mediator Henry Smock, Esq., resulting in the parties resolving their conflict. . . . Defendants admit that the parties reached a settlement on or about September 8, 2009, wherein Plaintiff would dismiss her lawsuit against Defendants in exchange for a sum certain to be paid by Defendants within thirty (30) days." (Dkt. No. 141 at ¶ 3). Defendants state that these facts and Plaintiff's exhibits are "barred under the parol[] evidence rule" and "privileged and inadmissible" as part of mediation. (Dkt. No. 144 at ¶ 3). Regardless of the rest of the contents of Plaintiff's factual statement and exhibits—which is not necessary to the Court's rulings—both parties agree that a mediation session was held on September 2, 2009, as reflected in both parties' statements of undisputed facts and the Report of Mediation filed by the Mediator on the Court's docket. (Dkt. Nos. 78; 134 at ¶ 3; 141 at 1-2, 9).

[4] Defendants maintain that a settlement agreement was reached "on or about September 8, 2009." (Dkt. No. 134 at ¶ 3; *see also* Dkt. No. 89 at 2 ("telephonic mediation conferences continued, and the parties reached a settlement agreement on September 8, 2009.")). Plaintiff states that the settlement was reached on September 2, 2009. (Dkt. No. 87 at 1).

of the confidentiality agreement. (Dkt. Nos. 134 at ¶ 10; 141 at 3-4; 144 at ¶ 10; 142-7).[5] On

December 4, 2009, Plaintiff filed a motion to withdraw her First Motion to Enforce Settlement.

(Dkt. Nos. 82; 134 at ¶ 11; 141 at 4, 13; 144 at ¶ 13). That same day, Magistrate Judge Cannon

noted the termination of Plaintiff's First Motion to Enforce Settlement on the docket. (Dkt. Nos.

141 at 4; 144 at ¶ 13).

On December 23, 2009, the Mediator sent Plaintiff's counsel a letter stating that it attached

a further modified MRA from Defendants' counsel. (Dkt. Nos. 141 at 4-5; 144 at ¶ 14; 142-9).[6]

On December 28, 2009, Plaintiff sent Defendants' counsel an executed MRA. (Dkt. Nos. 141 at

5; 144 at ¶ 15; 142-10).[7] On January 12, 2010, Plaintiff executed a further revised MRA and sent

---

[5] Defendants state that it is undisputed that "[a]fter Plaintiff publicly filed her motion to enforce, the attorneys for Plaintiff and Defendants exchanged emails regarding the public filing of the motion, in which Defendants notified Plaintiff of her clear breach of the confidentiality agreement, and demanded Plaintiff withdraw the motion and remove it from the public docket." (Dkt. No. 134 at ¶ 10). Plaintiff submitted an exhibit containing this email conversation that occurred on November 30, 2009 and December 3, 2009. (Dkt. No. 142-7). Defendants object to Plaintiff's exhibit (Dkt. No. 142-7) on the grounds that it is "barred under the parol[] evidence rule," and object to Plaintiff's fact and exhibit as "privileged and inadmissible" as part of mediation. (Dkt. No. 144 at ¶ 10). Defendants had previously submitted this exact email thread in support of their earlier response to Plaintiff's Second Motion to Enforce Settlement. (Dkt. No. 89-3). As discussed in section III.A.2.a below, the Court will overrule Defendants' mediation privilege objection. The Court will also overrule Defendants' parol evidence objection as discussed below in sections III.A.2.a and III.A.3.

[6] Defendants object to Plaintiff's exhibit (a letter from Mediator Smock dated December 22, 2009 with a fax cover sheet dated December 23, 2009 (Dkt. No. 142-9)) on the grounds that it is "barred under the parol[] evidence rule," and object to Plaintiff's fact and exhibit as "privileged and inadmissible" as part of mediation. (Dkt. No. 144 at ¶ 14). The Court will overrule Defendants' parol evidence rule objection as discussed below in sections III.A.2.a and III.A.3. The Court will also overrule Defendants' mediation privilege objection, and Defendants have otherwise waived the mediation privilege as discussed below in section III.A.2.a.

[7] Defendants object to Plaintiff's exhibit (a letter from Plaintiff's counsel to Defendants' counsel dated December 28, 2009 (Dkt. No. 142-10)) on the grounds that it is "barred under the parol[] evidence rule," and object to Plaintiff's fact and exhibit as "privileged and inadmissible" as part of mediation. (Dkt. No. 144 at ¶ 15). The Court will overrule Defendants' parol evidence rule objection as discussed below in sections III.A.2.a and III.A.3. The Court will also overrule

it to Defendants' counsel. (Dkt. Nos. 134 at ¶ 13; 141 at 5, 14; 144 at ¶ 16; 142-11).[8] The same

day, Defendants' counsel sent an email to Plaintiff's counsel stating that they had received the

revised MRA. (Dkt. Nos. 141 at 5; 144 at ¶ 17; 142-12).[9] On January 25, 2010, Defendants'

counsel sent Plaintiff's counsel a letter stating that the filing of the First Motion to Enforce

Settlement—which was still on the public docket—was a material breach of the settlement

agreement and thus, Defendants would not pay any settlement proceeds to Plaintiff. (Dkt. Nos.

134 at ¶¶ 15-16; 141 at 6, 14-15; 144 at ¶ 20; 142-13).[10]

---

Defendants' mediation privilege objection, and Defendants have otherwise waived the mediation privilege as discussed below in section III.A.2.a.

[8] Defendants state that it is undisputed that "[o]n January 12, 2010, Plaintiff executed a revised Mutual Release Agreement ("MRA"), which was also signed "Reviewed & Approved" by her attorney, and sent it to Defendants' attorney." (Dkt. No. 134 at ¶ 13). However, Defendants object to Plaintiff's exhibit (a letter from Plaintiff's counsel to Defendants' counsel dated January 12, 2010 (Dkt. No. 142-11)) on the grounds that it is "barred under the parol[] evidence rule," and object to Plaintiff's fact and exhibit as "privileged and inadmissible" as part of mediation. (Dkt. No. 144 at ¶ 16). As discussed in section III.A.2.a below, the Court will overrule Defendants' mediation privilege objection. The Court will also overrule Defendants' parol evidence rule objection as discussed below in sections III.A.2.a and III.A.3.

[9] Defendants object to Plaintiff's exhibit (an email exchange between the offices of Plaintiff's counsel and Defendants' counsel dated January 12 and 20, 2010 (Dkt. No. 149-12)) on the grounds that it is "barred under the parol[] evidence rule," and object to Plaintiff's fact and exhibit as "privileged and inadmissible" as part of mediation. (Dkt. No. 144 at ¶¶ 17, 18). The Court will overrule Defendants' parol evidence rule objection as discussed below in sections III.A.2.a and III.A.3. The Court will also overrule Defendants' mediation privilege objection, and Defendants have otherwise waived the mediation privilege as discussed below in section III.A.2.a.

[10] Defendants state that it is undisputed that "Defendants' attorney sent a January 25, 2010 letter reiterating that Plaintiff's First Motion to Enforce continued to breach the parties' confidentiality agreement" and "[i]n the same letter, Defendants advised Plaintiff that, in light of her continuing breach of the material confidentiality terms of the settlement agreement, Defendants no longer were obliged to perform and would not pay any settlement proceeds to Plaintiff." (Dkt. No. 134 at ¶¶ 15-16). Plaintiff submitted the January 25, 2010 letter as an exhibit. (Dkt. No. 142-13). Defendants object to Plaintiff's exhibit (Dkt. No. 142-13) on the grounds that it is "barred under the parol[] evidence rule," and object to Plaintiff's fact and exhibit as "privileged and inadmissible" as part of mediation. (Dkt. No. 144 at ¶ 20). Defendants had previously submitted this same letter in support of their earlier response to Plaintiff's Second Motion to Enforce

On February 25, 2010, Plaintiff filed a motion for leave to file Plaintiff's First Motion to Enforce Settlement under seal. (Dkt. Nos. 83; 134 at ¶ 17; 141 at 15). On February 26, 2010, the Court granted Plaintiff's motion to seal and sealed the filing. (Dkt. Nos. 84; 134 at ¶ 18; 141 at 7; 144 at ¶ 21).[11]

On March 23, 2010, Plaintiff filed her Second Motion to Enforce Settlement unsealed. (Dkt. Nos. 85; 134 at ¶ 19; 141 at 7, 16; 144 at ¶ 22). Immediately, Defendants' counsel emailed Plaintiff's counsel about the unsealed filing of the Second Motion to Enforce Settlement. (Dkt. Nos. 134 at ¶ 21; 141 at 7; 144 at ¶ 23). On the same day, March 23, 2010, Plaintiff filed a motion for leave to file her Second Motion to Enforce Settlement under seal. (Dkt. Nos. 86; 134 at ¶ 22; 141 at 7, 17). On March 29, 2010, the Court granted Plaintiff's motion to seal and sealed the filing. (Dkt. Nos. 134 at ¶ 23; 141 at 7, 17-18; 144 at ¶ 25).

### 2.    The Mutual Release Agreement

In their Motion to Enforce Settlement, Defendants argue that there is no dispute that the parties reached a settlement agreement and that the agreement was reduced to writing in the Mutual Release Agreement. (Dkt. No. 133 at 7). Defendants further argue that there is no dispute that the confidentiality clause was a material part of the settlement. *Id.* at 9-10. Defendants ask that the

---

Settlement (Dkt. No. 89-4). As discussed in section III.A.2.a below, the Court will overrule Defendants' mediation privilege objection. The Court will also overrule Defendants' parol evidence objection as discussed below in sections III.A.2.a and III.A.3.

[11] While in her Response to Defendants' Statement of Facts Plaintiff states that the motion "had effectively been sealed" when she filed her motion to withdraw in December 2009 (Dkt. No. 141 at 15-16), Plaintiff's counsel is undoubtedly aware that a motion to withdraw is not the equivalent of a motion to seal. Indeed, there would have been no need for Plaintiff to file a motion to seal in February 2010 if her First Motion to Enforce Settlement had "effectively been sealed" by the motion to withdraw. Plaintiff's counsel ultimately admitted as much. (Hr'g Tr. At 53-54 ("[In December 2009,] we only moved to withdraw the motion and didn't move to seal it until February of 2010.")).

Court enforce the MRA, and find that Plaintiff's material breach of the settlement agreement warrants their refusal to pay any settlement proceeds to Plaintiff. *Id.* at 12.

At various points in her written submissions, Plaintiff takes different positions as to whether the MRA constitutes a binding contract. (*Compare* Dkt. Nos. 140 at 16-17 and 87 at 5 *with* Dkt. No. 141 at 6 and 12).[12] At the hearing, Plaintiff stated that the MRA was not a binding contract;[13] that there was fraud in the inducement;[14] and that Defendants had waived any claim of

---

[12] The parties have both stated at various times on the record that the Plaintiff's execution on January 12, 2010 of the release sent by Defendants constituted an acceptance of Defendants' offer. (*See* Dkt. No. 87 at 5 ("Attorney Engeman's proffering of releases on behalf of Defendant on December 22, 2009 and on or around early January 2010 . . . constituted an offer, as the release manifested a willingness to enter into a bargain and have the lawsuit resolved. Likewise, Plaintiff's signing of the release and delivery to Defendant[s] on . . . January 12, 2010 manifested her assent to Defendant's [sic] terms and constituted an acceptance.") (citations omitted)); Dkt. No. 140 at 16 (Plaintiff "executed and returned the Release to Defendants on January 12, 2010 . . . . There is clearly and [sic] offer, and an acceptance of that offer when Plaintiff executed and returned the modified Release."); Hr'g Tr. at 75-76, 84).

[13] Defendants argue that, because Plaintiff and her attorney signed the MRA on January 12, 2010, "she cannot dispute she agreed to all of the terms of the MRA." (Dkt. No. 143 at 4). Additionally, Defendants argue that because Plaintiff relied on the MRA in her Second Motion to Enforce, she is estopped from saying that the MRA is not a valid contract. (Hr'g Tr. at 28). "Under the doctrine of judicial estoppel, a court can defend the integrity of the judicial process by barring a party from taking contradictory positions during the course of litigation." *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261 (3d Cir. 2009). Nonetheless, the Court must still assure itself that the MRA constitutes a legally binding contract. *See Dombroski v. J.P. Morgan Chase Bank, N.A.*, 513 F. App'x 212, 214 (3d Cir. 2013) ("[E]stoppel will not operate to create a contract that never existed [and] the court will not write a new contract for the parties by estoppel." (quoting *Ayer v. Bd. of Ed. of Cent. Sch. Dist. No. 1*, 330 N.Y.S.2d 465, 468-69 (Sup. Ct. 1972)) (internal quotation marks omitted) (alteration in original)).

[14] Plaintiff did not raise the legal issue of fraud in the inducement in her written submissions—only in passing at the hearing. The parties have therefore provided no briefing on the legal standard or its application to this case. Thus, the Court declines to address the argument. *See Bell v. City of Harrisburg*, 457 Fed. App'x 164, 167 (3d Cir. 2012) (district court correctly found that party did not adequately raise constitutional claims by making a passing reference to them in its briefing and not otherwise substantively raising it prior to objecting to the magistrate's Report and Recommendation); *Sussman v. Pcgny Corp.*, Civil Action No. 2013-0125, 2020 U.S. Dist. LEXIS 242674, at *27 (D.V.I. Dec. 28, 2020) (following *Bell*); *Gallagher v. Allegheny County*, Civil Action No. 09-103, 2011 U.S. Dist. LEXIS 7047, at *7 (W.D. Pa. Jan. 25, 2011) ("A litigant who

material breach based on the confidentiality provision because the alleged breach occurred before the agreement was entered into. (*See* Hr'g Tr. at 39-40). Accordingly, the Court must determine whether the MRA constitutes an enforceable contract as a matter of law.

### a. Admissible Evidence

In their written submissions, Defendants object to most of the evidence of the parties' negotiations leading up to January 12, 2010 as being privileged and inadmissible under the mediation privilege set forth in Local Rule of Civil Procedure 3.2. (Dkt. No. 144 at 2-14).[15] As it existed at the time of the parties' mediation, Local Rule 3.2 provided that "[e]ach party involved in a Court-ordered mediation conference has a privilege to refuse to disclose, and to prevent any person present at the proceeding from disclosing, communications made during such proceeding." LRCi 3.2(e)(4) (2009). The Rule further provided that "[a]ll communications, written or oral, made in the course of a mediation proceeding, other than an executed settlement agreement, shall be inadmissible as evidence in any subsequent legal proceeding, unless all parties agree otherwise." LRCi 3.2(e)(5) (2009). Local Rule 3.2 "not only makes such communications inadmissible, but creates a mediation privilege, giving the holder the right to refuse to disclose, and to prevent any person present at the proceeding from disclosing communications made during such proceeding." *Nielsen-Allen v. Indus. Maint. Corp.*, Civ. No. 2001/70 FR, 2004 U.S. Dist. LEXIS 4199, at *3 (D.V.I. Jan. 28, 2004) (internal quotation marks omitted).

---

fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority forfeits that point." (quoting *Grossman v. Jimenez*, Civ. No. 91-0423, 1992 U.S. Dist. LEXIS 22766, at *5 (M.D. Pa. April 17, 1992)) (internal quotation marks omitted)).

[15] The Local Rules of Civil Procedure, including Local Rule 3.2, were amended as of April 2021. In this opinion, the Court refers to the formulation of Local Rule 3.2 in place at the time of the parties' mediation in 2009.

For several reasons, the Court will overrule Defendants' mediation privilege objections to the undisputed facts and exhibits referenced by the Court in section III.A.1. First, Defendants have objected to certain of Plaintiff's exhibits that they have themselves previously submitted to the Court as evidence, seemingly without the belief that they were barred by either the mediation privilege or the parol evidence rule. (*See supra* notes 5, 10). Further, Defendants have put forward certain "undisputed facts" in support of their own Motion to Enforce Settlement that are virtually identical to Plaintiff's factual statements and communicate the essence of what is contained in Plaintiff's exhibits. (*See supra* notes 5, 8, 10). In addition, Defendants are asking the Court to enforce a contract while trying to shield—on the grounds of privilege—the facts that would allow the Court to determine whether the contract was formed as a matter of law. (*See supra* notes 6, 7, 9). However, Defendants cannot use facts in support of its position, while barring such use of the same or related facts by Plaintiff on grounds of privilege, nor can Defendants assert a legal position while depriving the Court of facts, on grounds of privilege, to be able to determine whether that legal position is sound. *See Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1256-1257 (M.D. Fla. 2014) ("[E]ven if the mediation privilege (or any privilege for that matter) is applicable to documents identified on Milgrim's list, the Court finds that Plaintiffs' assertion of the privilege in this case is barred by the sword and shield doctrine. It is well-established that '[u]nder the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged.'" (quoting *Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010))); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 513 (D. Del. 2005) ("[I]t is unfair to allow a party to 'disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position . . . .' . . . Similarly, a party should not be permitted to use the privilege to shield

information which it has deliberately chosen to use offensively." (quoting *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977))); *Casey v. Unitek Global Servs.*, Civil Action No. 14-2671, 2015 U.S. Dist. LEXIS 15715, at *25 (E.D. Pa. Feb. 9, 2015) ("Courts generally agree that the attorney-client privilege cannot be used as both a sword and a shield. . . . A party should not be permitted to use the privilege to shield information which it has deliberately chosen to use offensively." (internal citations and quotation marks omitted)).

Defendants have also objected to statements whose essence can be discerned from the Court's own docket and record of the case. (*See supra* note 3). Assertion of the mediation privilege cannot be reconciled with the existence of information that is legitimately on the public record.

Based on the foregoing, the Court will overrule those mediation privilege objections as they pertain to the undisputed facts set forth in section III.A.1 upon which the Court relies for its rulings herein. The Court notes as well that the parties have agreed to waive their mediation privilege to allow the Court to determine whether the MRA constitutes a binding contract. (*See* Hr'g Tr. at 37, 67).

Defendants also object to most of the evidence of the parties' negotiations leading up to January 12, 2010 as being barred by the parol evidence rule. (Dkt. No. 144 at 2-14). However, the parol evidence rule does not apply to exclude extrinsic evidence that is used to determine whether a valid contract exists. *See Arvidson v. Buchar*, 72 V.I. 500, 520 (V.I. Super. Ct. 2020) ("Where there is a question of mutual consent, the Court may look outside the four corners of [a written] agreement because the manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intentions of the parties to contract." (quoting *United States v. Toscano*, 799 F. Supp. 226, 240 (E.D.N.Y. 2011) (internal quotation marks omitted) (alteration in original)); 11 Williston on Contracts § 33:18 (4th ed. 2021) ("Since the parol

14

evidence rule does not become applicable unless there is a written integration of the agreement, it may be shown by extrinsic evidence . . . that a writing was never executed or delivered as a contract."); Restatement (Second) of Contracts § 214 (1981) ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause."); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1408 (3d Cir. 1991) ("no contract, no parol evidence rule" (quoting *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 406 (3d Cir. 1981) (internal quotation marks omitted)). Therefore, the Court overrules Defendants' parol evidence objections to the extent that they seek to bar evidence of the parties' communications that speak to contract formation.

### b. The Validity of the MRA

"A mediated settlement agreement is an enforceable contract governed by basic contract principles." *Boynes v. Transp. Servs. of St. John*, 60 V.I. 453, 459 (2014). Virgin Islands law applies to the construction and enforcement of contracts, including settlement agreements. *See Isidor Paiewonsky Assoc. v. Sharp Properties*, 761 F. Supp. 1231, 1233 (D.V.I. 1991); *Nicholas v. Wyndham Int'l, Inc.*, Civil No. 2001-147, 2007 WL 4811566, at *2 (D.V.I. Nov. 20, 2007). While the common law rule for the formation of a contract has not been expressly adopted by the Virgin Islands Supreme Court, it has been stated that "the basic elements for what constitutes a valid contract are so widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction that maintaining these elements is unquestionably the soundest rule for the Virgin Islands." *Valentin v. Grapetree Shores*, No. SX-11-CV-305, 2015 WL 13579631, at *3 (V.I. Super. Ct. June 30, 2015) (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014)). Thus, "[i]n the Virgin Islands, a valid contract requires a 'bargain in

15

which there is a mutual assent to the exchange, and consideration.'" *Id.* (quoting *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008)); *see also Daniel v. Shamar Pemberton & Carty Enters.,* No. ST-2019-CV-00157, 2020 V.I. LEXIS 77, at *5 (V.I. Super. Ct. Dec. 9, 2020) ("The formation of a contract requires 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration' and consideration 'requires a performance or a return promise that has been bargained for.'" (quoting *Univ. of the V.I. v. Petersen-Springer*, 232 F. Supp. 2d 462, 469 (D.V.I. App. Div. 2002) and Restatement (Second) of Contracts §§ 17, 71 (1981))); *accord Sunshine Shopping Ctr. v. LG Elecs. Pan., S.A.*, Civil Action No. 2015-0041, 2018 U.S. Dist. LEXIS 161884, at *17 (D.V.I. Sept. 21, 2018); *McCoy v. Buccaneer, Inc.*, Civil Action No. 2015-0033, 2020 U.S. Dist. LEXIS 156787, at *6 (D.V.I. Aug. 28, 2020). A party's assent to a bargain "is not measured by subjective intent, but by outward expression." *Valentin*, 2015 WL 13579631, at *3 (citing *Morales*, 541 F.3d at 221 and *Fitz v. Islands Mech. Contractor, Inc.*, 53 V.I. 806, 820 (D.V.I. 2010)).

Both elements of a contract are present here. First, as to mutual assent by the parties, it is undisputed that on January 12, 2010, counsel for Plaintiff sent an executed Mutual Release Agreement to Defendants' attorney. However, Plaintiff argues that the absence of signatures on behalf of Defendants demonstrates a lack of mutual assent. (Dkt. No. 141 at 6, 12). No party asserts, and there is no evidence before the Court, that Defendants ever executed the Release.

Although a party's signature on a contract "is a clear manifestation" of assent, *Richardson v. Virgin Islands Port Auth.*, Civil Action No. 2009-136, 2010 WL 1641154, at *7 (D.V.I. April 21, 2010) (citing *Morales,* 541 F.3d at 221), "[a]s a general rule, signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties," *Fitz*, 53 at 817 (quoting *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 584 (3d Cir.

2009)) (internal quotation marks omitted). Here, neither Virgin Islands law nor the text of the MRA requires the signatures of all parties in order for the contract to be binding. Without Defendants' signatures, however, some other indication of mutual assent is required. *See Fitz*, 53 at 819-20 (finding mutual assent when plaintiff signed the contract and defendant's conduct manifested its assent).

As noted, on January 12, 2010, Plaintiff executed a revised MRA and sent it to Defendants' counsel. The parties agree that Plaintiff signed the January 12, 2010 Release after receiving this revised version from Defendants. (Hr'g Tr. at 76, 81, 83-84; Dkt. No. 141 at 4-5; *see also* Dkt. No. 142-11 (Plaintiff sent executed MRA "as modified and received from Attorney Smock.")[16]). Thus, the parties have manifested their mutual assent through offer and acceptance. *See Williams v. V.I. Gov't Hosps. & Health Facilities Corp.*, No. ST-15-CV-159, 2016 V.I. LEXIS 30, at *6-7 (V.I. Super. Ct. April 1, 2016) ("Manifestation of assent 'almost invariably' occurs when one party makes an offer and the other party accepts that offer." (quoting *Titan Med. Group v. Governor Juan F. Luis Hosp. & Med. Ctr.*, No. SX-13-CV-497, SX-2013-CTO-00004, 2015 V.I. LEXIS 79, at *13 (V.I. Super. Ct. July 14, 2015))); *see also Kennedy Funding, Inc. v. GB Props.*, *Ltd.*, No. ST-14-CV-180, 2018 V.I. LEXIS 1, at *7 (V.I. Super. Ct. Jan. 8, 2018) ("Essential to the creation of a contract are the elements of offer and acceptance.").[17]

---

[16] The parties have stated that Mediator Smock was continuing to pass drafts between the parties. (Hr'g Tr. at 59-61), although the formal mediation session had concluded.

[17] Mutual assent may also manifest itself as conduct. *See Fitz*, 53 V.I. at 819-820 (finding enforceable employment contract where only the plaintiff signed the contract, but defendant proceeded to perform under the contract); *Cohen v. Gabriel Enters., Inc.*, Civil Action No. 2011-0059, 2013 U.S. Dist. LEXIS 39407, at *10 (D.V.I. Mar. 21, 2013) (noting a course of conduct may manifest acceptance of an offer) (citing Restatement (Second) of Contracts § 22, cmt. b (1981)); *V.I. Taxi Ass'n v. V.I. Port Auth.*, No. ST-97-CV-117, 2014 V.I. LEXIS 136, at *14 (V.I. Super. Ct. Aug. 7, 2014) ("[T]he Court finds mutual assent via the long course of performance between [the parties]."). While Defendants did not sign the MRA, Defendants relied on—and

The second element of a contract—consideration—"requires a performance or a return promise that has been bargained for." *VF Dev. v. Greaves*, Civil No. 2009-138, 2011 WL 4500295, at *2 (D.V.I. Sept. 27, 2011) (citing Restatement (Second) of Contracts § 17 (1981)). The MRA clearly demonstrates the existence of consideration in that Plaintiff agrees to release her claims in exchange for a monetary sum. *See, e.g.*, *Siclari v. CBI Acquisitions, LLC*, Civil No. 2015-28, 2017 WL 5162806, at *3 (D.V.I. Nov. 7, 2017) ("[T]he agreement as drafted was supported by consideration on both sides, namely that [the plaintiff] would relinquish the right to pursue her claims against [the defendant] and in return [the defendant] would pay [the plaintiff] a sum certain.").

Thus, based on the undisputed evidence, the Court finds that the parties entered into a binding contract when Plaintiff and her counsel signed the Mutual Release Agreement that had been received from Defendants and sent the executed Release to Defendants' counsel on January 12, 2010.

### 3.    The Alleged November 2009 Breach of the MRA

It is undisputed that when Plaintiff filed her First Motion to Enforce Settlement on November 25, 2009, she filed it on the public docket. The First Motion to Enforce contained some

---

continue to rely on—the MRA in support of their argument that they are discharged from their obligation to pay Plaintiff due to her alleged breach of the confidentiality provision. Defendants' conduct after Plaintiff's return of her executed copy of the MRA was to send a letter on January 25, 2010 stating that they were no longer obligated to perform under the contract. (Dkt. Nos. 134 at ¶¶ 15-16; 141 at 6; 144 at ¶ 20). In their January 25, 2010 letter to Plaintiff's counsel, Defendants specifically note the binding nature of the MRA: "Such violation constitutes a material breach of a material term of the settlement agreement, as you and you [sic] client have explicitly recognized and acknowledged at the end of Section 4 of the Mutual Release Agreement that memorialized the terms of the settlement agreement." (Dkt. No. 142-13 at 2). Defendants stated at the hearing that they specifically relied on the confidentiality provision as articulated in the executed MRA in support of their January 25, 2010 letter. (Hr'g Tr. at 88).

of the details of the parties' settlement agreement. On December 4, 2009, Plaintiff filed a motion

to withdraw her First Motion to Enforce Settlement, but did not request to have the Motion to

Enforce sealed. Thus, although the Motion to Withdraw was granted, the Motion to Enforce

remained on the public docket until February 26, 2010, when it was sealed in response to Plaintiff's

Motion to Seal. Defendants argue that Plaintiff materially breached the clear language of the MRA

by placing the settlement agreement and its terms on the public docket. (Dkt. No. 133 at 8-11).

Section Four of the MRA—as recited by Defendants—lays out the parties' agreement

regarding confidentiality:

> The parties covenant that, at no time prior to the dates of this MUTUAL RELEASE
> AGREEMENT, have the parties reviewed, discussed, or disclosed, orally or in writing, the
> existence of the MUTUAL RELEASE AGREEMENT, the negotiations leading to the
> MUTUAL RELEASE AGREEMENT or any of the terms or conditions of the MUTUAL
> RELEASE AGREEMENT with any person, organization or entity other than Rivera's
> immediate family, attorneys and accountants and Choice's and/or ATN's insurers, brokers,
> attorneys, accounting and pay processing team and others with a business need to know.
> The parties agree that they will keep the fact, terms, and amount of this MUTUAL
> RELEASE AGREEMENT completely confidential, and that the parties will not hereafter
> disclose the terms, amount of or fact of the settlement embodied in this MUTUAL
> RELEASE AGREEMENT to anyone other than Rivera's immediate family, attorneys and
> accountants and Choice's and/or ATN's insurers, brokers, attorneys, accounting and pay
> proceeding team and others with a business need to know, provided that the parties may
> make any other disclosures as are required by law. . . . The parties further recognize and
> acknowledge that this confidentiality provision is a material term of this MUTUAL
> RELEASE AGREEMENT, and that its violation will constitute a material breach.

(Dkt. Nos. 139-1 at 3-4; 133 at 8-9, 10).

The Court finds no ambiguity in this language—disclosure of the "fact, terms, [or] amount"

of the MRA to anyone other than those identified in the confidentiality provision constitutes a

breach of the MRA. The filing of a document on the CM/ECF system without sealing it makes that

filing available to the public, and would clearly make available such information to individuals

other than those identified in Section Four of the MRA. *See Baella-Silva v. Hulsey*, 454 F.3d 5, 11

(1st Cir. 2006) ("Filing a document on the district court's electronic filing system is not consistent

with keeping information confidential. Documents filed electronically are immediately available electronically over the Internet, and the court's website provides 24-hour access to the court's electronic docket."). Moreover, the Court agrees with Defendants that the MRA is unambiguous in stating that such a breach is *material*. *See Phillip v. Marsh-Monsanto*, 66 V.I. 612, 625 (2017) ("Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms.").

Plaintiff argues that a breach has not occurred because Defendants cannot prove that any member of the public saw the confidential information on the docket. (Dkt. No. 140 at 14). However, the filing of confidential information on a public docket is still a breach of confidentiality, even if a party could not prove that a member of the public actually viewed the document. *See Baella-Silva*, 454 F.3d at 11 (agreeing with the district court's finding that the filing of an unsealed motion violated the parties' confidentiality agreement "even if no third party viewed it"); *Norris v. Ford Motor Credit Co.*, 198 F. Supp. 2d 1070, 1073 (D. Minn. 2002) ("[T]he filing of the agreement in the clerk's file, which is undisputedly open to the public, is a breach of the confidentiality provision. It is of no moment whether FMC can show that someone actually saw the agreement.").

Plaintiff also argues that since the MRA containing the confidentiality clause was not executed until January 12, 2010, her First Motion to Enforce Settlement filed on November 25, 2009 would not have breached any agreement. (Dkt. No. 140 at 12-13). Defendants point out, however, that "[i]n the MRA executed by Plaintiff, both she and Defendants accepted express duties to. . . keep the settlement agreement and its terms confidential, *both prior to and after the execution of the written agreement*." (Dkt. No. 133 at 8) (emphasis added).

The Court agrees that the plain and unambiguous language of the MRA makes the confidentiality clause of the contract backward-looking. The parties agreed that "*at no time prior to the dates of this MUTUAL RELEASE AGREEMENT*, have the parties reviewed, discussed, or disclosed, orally or in writing [the existence or terms of the MRA]." (Dkt. No. 139-1 at 4) (emphasis added). Parties are permitted to write contracts that are retroactive in nature. *See Debreceni v. Outlet Co.*, 784 F.2d 13, 18-19 (1st Cir. 1986) ("[I]n some circumstances, parties to a contract may bind themselves retroactively."); 2 Williston on Contracts § 6:61 (4th ed. 2021) ("[I]t seems clear that, where the parties themselves agree that a contract between them should be given effect as of a specified date, absent the intervention of third-party rights, there is no sound reason why that agreement should not be given effect."). The Court sees no reason why it should not apply the plain language of the contract that makes the confidentiality clause backward-looking. Thus, under a plain reading of the MRA, the filing of Plaintiff's First Motion to Enforce Settlement on the public docket in November 2009 constitutes a material breach of the MRA.

The Court finds, however, that Defendants have waived any right to be relieved of their obligations under the MRA based on the November 2009 breach. Plaintiff argues that because Defendants continued to negotiate the terms of the MRA after the breach and represented to her that the settlement funds were available, this demonstrates that Defendants accepted the steps she took to cure the breach. (Dkt. No. 140 at 14-15). The Court agrees with the essence of Plaintiff's argument and concludes that waiver has occurred here.

Under basic contract principles:

> A party to a contract may waive a condition precedent to its performance, or a breach of the contract's provisions, *by conduct manifesting a continued recognition of the contract's existence after learning of the breach or failure of the condition, such as by continuing to perform or accepting performance under the contract and receiving the benefit of it*. . . . [B]y choosing to proceed following the nonoccurrence of a condition or a breach, the party who would otherwise have been

21

> excused may broadly be said to have waived the failure of the condition or the breach. There are few principles of contract law better established, or more uniformly acknowledged, than the rule that when a contract not fully performed on either side is continued in spite of a known excuse, the right to rely on the known excuse is waived; in turn, the defense based on the excuse is lost and the party who would otherwise have been excused is liable if it subsequently fails to perform.

13 Williston on Contracts § 39:31 (4th ed. 2021) (emphasis added).

Virgin Islands law recognizes that "a party may be prevented from asserting a legal right . . . through showing of a waiver." *Great Lakes Reinsurance (UK) PLC v. Kranig*, Civil No. 2011-122, 2013 WL 68731, at *4 (D.V.I. Jan. 7, 2013) (quoting *Abramsen v. Vince Bedminster,* 45 V.I. 3, 9-10 (V.I. Terr. Ct. 2002)) (internal quotation marks omitted); *see also Arvidson*, 72 V.I. at 521 (quoting *Eurolog Packing Grp. v. EPG Industries, LLC*, No. LACV 18-02982-VAP (JEMx), 2019 U.S. Dist. LEXIS 129281, at *6-7 (C.D. Cal. April 30, 2019)) ("[P]arties may, by their words or conduct, waive contractual rights." (internal quotation marks omitted)); *Billman v. V.I. Equities Corp.*, 743 F.2d 1021, 1024 (3d Cir. 1984) ("The landlords can be found to have waived their right to insist on strict compliance simply because they have, in effect, promised not to assert it.").

Waiver is defined as "the voluntary relinquishment of a known right." *Sunshine Shopping Ctr., Inc. v. KMart Corp.*, 85 F. Supp. 2d 537, 543 (D.V.I. 2000) (quoting Restatement (Second) of Contracts § 84, cmt. b (1981)) (internal quotation marks omitted); *accord Ringo v. Southland Gaming of U.S. Virgin Islands, Inc.*, No. ST-10-CV-116, 2010 WL 7746074, at *3 (V.I. Super. Ct. Sept. 22, 2010). "Waiver requires 'a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part.'" *Great Lakes Reinsurance (UK) PLC*, 2013 WL 68731, at *4 (quoting *Carter v. Exxon Co. USA,* 177 F.3d 197, 204 (3d Cir.1999)); *accord Ringo*, 2010 WL 7746074, at *3. "When assessing circumstances alleged to evidence a waiver, the Court looks for acts and words that illustrate 'an intentional relinquishment or abandonment of' the contract term." *Arvidson*, 72 V.I. at 522 (quoting *Johnson v. Zerbst*, 304 U.S.

458, 464 (1938)); *see also Dewerd v. Bushfield*, 993 F. Supp. 365, 369 (D.V.I. 1998) ("Waiver . . . may be shown by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom."); *Billman*, 743 F.2d at 1024 (holding three factors necessary for a finding of waiver under Virgin Islands law: "First, [defendant] must have promised not to enforce the condition . . . . Second, [plaintiff] must have relied to its detriment on [defendant's] promise. And third, in view of the detrimental reliance, justice must require enforcement of a waiver." (citing Restatement (Second) of Contracts § 89 (1981); 5 Williston on Contracts § 689 (3d ed. 1961))).

The Court notes that "[g]enerally, waiver is a fact question turning on the question of intent." *Addie v. Kjaer*, 51 V.I. 463, 481 (D.V.I. 2009) (quoting *First Interstate Bank, N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) (internal quotation marks omitted); *see also Sabatini v. Its Amore Corp.*, 455 Fed. App'x 251, 256 (3d Cir. 2011). However, "waiver can be determined as a matter of law, where only one reasonable conclusion can be drawn from the undisputed facts." *In re Metropolitan International, Inc.*, 616 F.2d 83, 86 (3d Cir. 1980); *accord Cedrone v. Unity Sav. Asso.*, 609 F. Supp. 250, 254 (E.D. Pa. 1985); *see also Weyerhaeuser Co. v. Domtar Corp.*, 204 F. Supp. 3d 731, 740 (D. Del. 2016) ("The question of waiver is normally a jury question, unless the facts are undisputed and give rise to only one reasonable inference." (quoting *Mergenthaler v. Hollingsworth Oil Co. Inc.*, C.A. No. 90C-12-85, 1995 Del. Super. LEXIS 41, at *5 (Del. Super. Feb. 22, 1995))); *Gaffney v. Virgin Islands Prod. Corp.*, 1 V.I. 283, 300 (D.V.I. 1930) (finding waiver of a breach of contract as a matter of law).

The facts of this case are not disputed and only one reasonable inference can be drawn from them. The undisputed evidence shows that Defendants alerted Plaintiff to their view that filing the

First Motion to Enforce Settlement on the public record violated the parties' confidentiality agreement. On December 4, 2009, Plaintiff then filed a motion to withdraw her First Motion to Enforce Settlement. That same day, Magistrate Judge Cannon noted the termination of Plaintiff's First Motion to Enforce Settlement on the docket. However, it was not until February 25, 2010 that Plaintiff filed a motion for leave to file Plaintiff's First Motion to Enforce Settlement under seal. On February 26, 2010, the Court granted Plaintiff's motion to seal.

Defendants were obviously aware of the November 2009 breach as evidenced by their November 20, 2009 and December 3, 2009 communications to Plaintiff regarding the same. Defendants also admitted that they were aware of the fact that Plaintiff had filed a motion to withdraw—not a motion to seal—which would leave her First Motion to Enforce Settlement on the public docket. (Hr'g Tr. 89-90; *see also* Dkt. No. 133 at 2-3 (critiquing Plaintiff for not recognizing the same)). Defendants nonetheless admit that they continued to negotiate with Plaintiff after the November 2009 breach, ultimately resulting in the offer and acceptance of the revised version of the integrated MRA that Defendants are seeking to enforce. (Hr'g Tr. at 89-91). The Mediator communicated on behalf of Defendants in a letter dated December 22, 2009 that Defendants had made edits to the MRA and that if Plaintiff signed the MRA as revised, funds were available to pay the settlement. (*See* Dkt. No. 142-9 ("The funds are available.")). However, shortly after Plaintiff executed the MRA, Defendants stated that they were no longer obligated to perform their part of the bargain in light of the November 2009 breach. (Dkt. No. 142-13 (January 25, 2010 letter from Defendants' counsel to Plaintiff's counsel)).[18] Thus, Defendants concluded that,

---

[18] As Defendants' counsel noted in the January 25, 2010 letter: "On November 25, 2009 . . . Rivera improperly filed a motion requesting enforcement of the parties' settlement agreement on the District Court's Case Management and Electronic Case Files ("CM/ECF") docketing system. . . . The motion was not filed under seal. . . . [B]y filing the unsealed Motion to Enforce on the CM/ECF system, Rivera has breached the Confidentiality Agreement." (Dkt. No. 142-13 at 1).

notwithstanding the dismissal of Plaintiff's claims by the Magistrate Judge, Defendants were not required to pay the settlement amount to Plaintiff.

The Court finds that Defendants' actions lead to only one reasonable conclusion and demonstrate waiver as a matter of law. *See Caro Assocs. II, LLC v. Best Buy Co.*, Civil Action No. 09-907 (SDW) (MCA), 2012 U.S. Dist. LEXIS 29155, at *22-24 (D.N.J. Mar. 6, 2012) (finding on summary judgment that where Plaintiff was aware of the actions Defendant took and did not object, the Court could find waiver of a contract provision, stating that "Plaintiff has not provided any genuine issues of material facts."). Defendants took steps to finalize the contract—which included a covenant that there had been no prior disclosures of the agreement—despite their knowledge of Plaintiff's material breach.[19] *See* 23 Williston on Contracts § 63:9 (4th ed. 2021) ("[T]he general rule is that a contracting party who, with knowledge of a breach by the other party, receives and accepts payment or other performance of the contract will be held to have waived the breach."). Plaintiff relied on those actions to her detriment by signing an agreement to dismiss her claims against Defendants. Under the circumstances here, justice requires enforcement of a waiver. Accordingly, the Court finds that Defendants have waived the right to adopt a remedy of non-performance of their obligations under the MRA in response to the November 2009 breach. *See Creative Minds, LLC v. Reef Broad., Inc.*, No. ST-11-CV-131, 2014 WL 4908588, at *8 (V.I. Super. Ct. Sept. 24, 2014) ("because the Defendant reaffirmed the contract instead of seeking to

---

[19] The parties covenanted that "at no time prior to the date of this MUTUAL RELEASE AGREEMENT, have the parties reviewed, discussed, or disclosed, orally or in writing, the existence of the MUTUAL RELEASE AGREEMENT, the negotiations leading to the MUTUAL RELEASE AGREEMENT or any of the terms or conditions of the MUTUAL RELEASE AGREEMENT" with anyone other than those identified in the MRA—a fact which the parties, including Defendants, had to have known could not be reconciled with the earlier breach. This further confirms that the November 2009 breach was waived.

terminate it, a material breach by the Defendant in response to any alleged breaches by the Plaintiff was unwarranted").

The Court's finding in this regard is not altered by Defendants' objection, under the parol evidence rule, to much of the extrinsic evidence submitted by Plaintiff, including emails and letters between the parties. Defendants argue that the MRA contains the following integration or merger clause which prohibits Plaintiff from introducing "extraneous matter in an attempt to cloudy the proper resolution of the issue before the Court" (Dkt. No. 133 at 11):

> The parties acknowledge that no compromise or representation of any kind other than contained herein has been made to each other or anyone acting on their behalf. *Rivera and Choice expressly agree that this Mutual Release Agreement constitutes the full understanding and entire agreement between the parties* and that it is entered into knowingly and voluntarily.

*Id.* at 10 (emphasis added). The Court agrees that on its face, the quoted language amounts to an unambiguous merger clause. *See Phillip*, 66 V.I. at 627 ("[T]he second contract also includes an unambiguous merger clause, which provides that: '[the second contract] constitutes the *entire agreement* between the parties hereto.'" (emphasis added)); *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l, Inc.*, 51 V.I. 1116, 1124 n. 3 (D.V.I. 2009) ("A merger clause establishes that a written contract is the final and complete expression of the parties' agreement.").

The purpose of the parol evidence rule is to give effect to the parties' written expression of their agreement as opposed to oral or other understandings of the parties' agreement. *See* 11 Williston on Contracts § 33:1 (4th ed. 2021) (The rule "reflects and implements the legal preference . . . historically given to writings [and] . . . effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document."); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1405 (3d

Cir. 1991) ("Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement.").

The effect of a merger clause "is to 'discharge[] prior agreements to the extent that they are within its scope.'" *Virgin Islands Water & Power Auth.*, 51 V.I. at 1124 n. 3 (citing Restatement (Second) of Contracts § 209(1) (1981) and quoting Restatement (Second) of Contracts § 213(2) (1981)); *see also Phillip*, 66 V.I. at 628 (finding in the face of a clear merger clause that "all prior agreements relating to the sale of the property . . . were no longer binding on either party as a matter of law.").[20] Additionally, where the parties include an unambiguous merger clause, courts must "follow [the] plain meaning [of that writing] and abstain from imputing language or interpretations that are not in accordance with [such writing's] plain meaning." *Phillip*, 66 V.I. at 627 (quoting *Weary v. Long Reef Condominium Ass'n,* 57 V.I. 163, 169-70 (2012)) (alteration in original). "If the language of a clear and unambiguous contract includes a merger clause, that clause precludes consideration of extrinsic evidence '*used to demonstrate an intent that contradicts or adds to the intent expressed in the [contract].*'" *Id.* at 625 (quoting *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995)) (emphasis added).

However, the evidence at issue here is not being so used. The evidence here is being used simply to show: the November 2009 breach; that the parties continued to negotiate despite Plaintiff's material breach; and that the parties otherwise communicated regarding the status of the settlement proceeds. It is not introduced to interpret or change the meaning of the MRA, or to enforce a separate oral agreement. Indeed, the Court has concluded that under the plain language

---

[20] This also means that the MRA would supersede any oral settlement agreement purportedly reached in September 2009 after the parties participated in mediation.

of the MRA, the November 2009 filing on the public record constituted a material breach of the MRA. The evidence here is used instead to demonstrate the parties' behavior surrounding a breach and Defendants' response to that breach. Such use of evidence does not implicate the parol evidence rule. *See Advanced Medical, Inc. v. Arden Medical Systems, Inc.*, 955 F.2d 188, 196 (3d Cir. 1992) ("[the plaintiff's] evidence was intended to demonstrate only that the defendants had violated the *express* terms of the Agreement. Thus, we are satisfied that this issue should not be characterized as implicating the parol evidence rule."); *Edwards Business Machs. v. Laughlin*, Civil Action No. 93-CV-6879, 1995 U.S. Dist. LEXIS 4576, at *11 (E.D. Pa. April 10, 1995) ("The parol evidence rule normally will not bar proof of a breach or default under an agreement."); *see also Paramount Fin. Communs., Inc. v. Broadridge Investor Commun. Sols., Inc.*, Civil Action No. 15-405, 2019 U.S. Dist. LEXIS 114699, at *50 and n.7 (E.D. Pa. May 23, 2019) (finding evidence of statements made prior to execution of integrated agreement not barred by parol evidence rule because "[t]his evidence is not being introduced to 'alter, vary, modify, or contradict terms' of the [Agreements], but instead to show defendant's state of mind").[21]

Moreover, the Court need not look at *any* extrinsic evidence to conclude that Defendants have waived any breach by Plaintiff that occurred prior to the execution of the MRA, as such a waiver is reflected in the express language of the MRA itself. By assenting to the MRA, Defendants have agreed that "at no time prior to the date of the MUTUAL RELEASE

---

[21] Defendants also raised parol evidence objections to evidence of communications between the parties after the MRA was executed and sent on January 12, 2010. (*See* Dkt. No. 144 at ¶¶ 17, 18). The Court does not agree that these communications are used to interpret, explain, vary, modify, or contradict the meaning of the MRA in any way. In any event, communications after the MRA was finalized and negotiations on the terms were undisputedly concluded would not be barred by the parol evidence rule. *See Edwards Business Machs. v. Laughlin*, No. 93-CV-68791995 U.S. Dist. LEXIS 4576, at *11 (E.D. Pa. April 10, 1995) (*"*[E]vidence of any understanding reached *after* the parties entered the actual Agreement would not be barred [by the parol evidence rule].").

AGREEMENT *have the parties*" disclosed the terms of the MRA. (Dkt. No. 139-1 at 3) (emphasis added). With this language, the parties unambiguously covenanted that there was no improper disclosure prior to the execution of the MRA. As vigorously argued by Defendants, "[t]he MRA speaks for itself and all parties are bound by it." (Dkt. No. 133 at 11).

In light of the foregoing, the Court finds that Defendants waived Plaintiff's November 2009 breach of the confidentiality provision of the MRA, and therefore, were not excused from performing their obligations to pay Plaintiff the settlement proceeds under the executed MRA as a result of such breach. Thus, while the Court finds that there is no dispute as to any material fact, Defendants have not demonstrated that they are entitled to judgment as a matter of law based on Plaintiff's November 2009 breach. *See* Fed. R. Civ. P. 56. The Court will therefore deny Defendants' Motion to Enforce Settlement based on the November 2009 breach.

### 4.   The Alleged March 2010 Breach of the MRA

The undisputed facts show that in March 2010, Plaintiff again filed a motion to enforce on the public docket that revealed terms of the confidential settlement. Immediately, Defendants' counsel emailed Plaintiff's counsel about the unsealed filing of the Second Motion to Enforce Settlement. On the same day, March 23, 2010, Plaintiff filed a motion for leave to file her Second Motion to Enforce Settlement under seal. On March 29, 2010, the Court granted Plaintiff's motion and sealed the documents.

As described in the Court's analysis above, exposing the terms of the settlement agreement on the public docket constitutes a material breach under the express terms of the MRA. Based on this material breach, Defendants request that the Court declare that they are excused "from paying any sums to Plaintiff due to her breach of the confidentiality clause" and dismiss the case with prejudice. (Dkt. No. 133 at 12). In other words, Defendants seek the benefit of the bargain in the

form of dismissal of Plaintiff's claims against them without having to fulfill their obligation of paying the settlement proceeds. (Dkt. No. 133 at 1, 12-13). Plaintiff responds that if she materially breached the settlement agreement in March 2010 the proper remedy would be for Defendants to seek damages separately, rather than to excuse Defendants from paying the settlement proceeds. (Dkt. No. 140 at 3).

The Third Circuit has held that:

> Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. *Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits.*

*Pappan Enters. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992)) (emphasis added); *accord California Sun Tanning USA, Inc. v. Elec. Beach, Inc.*, 369 Fed. App'x 340, 348 (3d Cir. 2010); *see also GMC v. New A.C. Chevrolet*, 263 F.3d 296, 315 n.5 (3d Cir. 2001) ("It is hornbook law that when one party to a contract commits a material breach, the non-breacher has the option of either continuing the contract and suing for partial breach, or terminating the agreement in its entirety."); *Island Block Corp. v. Jefferson Constr. Overseas*, 349 F.2d 322, 326 (3d Cir. 1965) (finding under Virgin Islands law that "[w]hile plaintiff's failure to make the required shipments was a material breach which would have warranted cancellation of the contract, defendant nevertheless continued to accept plaintiff's performance. In these circumstances defendant is not relieved of its contractual obligations; rather its remedy is in damages by way of recoupment or counterclaim.") (citing 6 Williston on Contracts §§ 871, 887F (3d ed. 1962)).

Basic contract principles mandate that, when presented with a material breach in March 2010, Defendants had a choice to repudiate the contract and suspend its performance, or continue

performing and sue for damages or some other relief. *See California Sun Tanning USA, Inc.*, 369 Fed. App'x at 348; *David v. Scotland*, No. SX-13-CV-036, 2014 WL 11034925, at *2 (V.I. Super. Ct. Feb. 3, 2014) (stating a party "entitled to a remedy for material breach or repudiation potentially chooses between damages, specific performance, and rescission, electing the remedy that promises the most favorable recovery at the lowest cost." (citing Restatement (Third) of Restitution and Unjust Enrichment § 37 cmt. a (2011))); *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 36 V.I. 295, 318, 960 F. Supp. 931, 945-46 (D.V.I. 1997), *opinion clarified,* 37 V.I. 186 (D.V.I. June 19, 1997) ("The Court agrees that a material breach . . . would have entitled the non-breaching party . . . to rescind a contract and suspend its own performance. However, the non-breaching party would not be entitled to continue to reap the benefits of the contract while at the same time failing to perform its obligations under the contract.") (applying New York and Ohio law); *Diversant, LLC v. Carino*, Civ. No. 18-3155, 2018 U.S. Dist. LEXIS 165012, at *28-29 (D.N.J. Sept. 24, 2018) ("When a [material] breach occurs, the non-breaching party may elect one of two options: the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. . . . However, '[u]nder no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits.'" (quoting *S & R Corp.*, 968 F.2d at 376)); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas United States, Inc.*, 958 F. Supp. 2d 1238, 1244 (D. Colo. 2013) ("[A] party may not, on the one hand, declare the contract terminated and relieve itself from its own future performance obligations and, on the other hand, elect to receive the breaching party's continued performance. If the non-breaching party chooses to continue to receive the performance by the breaching party, it is deemed to have affirmed the contract and is required to honor its own obligations.") (citations omitted).

31

Defendants did not seek to terminate the agreement after the breach in March 2010. Instead, they simply continued to rely on their purported right to refuse to pay under the agreement while nonetheless reaping its benefits, as expressed in the January 25, 2010 letter. In that regard, Defendants requested that the Court *enforce* the MRA and dismiss Plaintiff's case with prejudice. Nor did Defendants seek damages. Indeed, Defendants have expressly stated that they have not sought, and are not seeking, relief in the form of damages: "At no time have Defendants sought damages for Plaintiff's breach of the settlement agreement." (Dkt. No. 143 at 12). In other words, Defendants are still seeking Plaintiff's performance while avoiding their obligations. This they cannot do.

Defendants have cited several cases that purportedly support their position that they can be excused under the settlement agreement from paying the settlement proceeds for a violation of the confidentiality provision while continuing to enjoy the benefits of the agreement. However, certain cases that they cite for this proposition involve contracts that are explicit about the particular penalty for such a violation. *See Baella-Silva*, 454 F.3d at 12 (finding the district court did not "abuse its discretion in assessing $50,000 in liquidated damages [because] [t]he parties had agreed that this would be the proper sanction for a breach of the confidentiality clause"); *Cuneo Law Group, P.C. v. Joseph*, 669 F. Supp. 2d 99, 112 (D.D.C. 2009) (enforceable liquidated damages provision "state[d] that the defendant will forfeit his percentages if he does not comply with paragraph six (the non-interference clause) of the 2002 Settlement Agreement"). While the MRA at issue in this case is explicit that a breach of the confidentiality provision is material, it provides no penalty for a violation of the provision. The Court cannot write a liquidated damages

provision into the parties' contract.[22]

Defendants also cite *Thomas v. Dep't of Hous. & Urban Dev.*, 124 F.3d 1439 (Fed. Cir. 1997), where a breach of confidentiality was found to be a material breach justifying the injured party's refusal to continue to perform. However, in that case confidentiality to protect the plaintiff's "clean" employment record "*was the major benefit* that Thomas received in exchange for agreeing to resign from his position." *Id.* at 1442 (emphasis added). In this case, there is no doubt that Defendants may have lost valuable consideration when Plaintiff placed the confidential terms of the settlement on the Court's public docket. However, in the context of a settlement agreement, Defendants would still be receiving its primary consideration, i.e. dismissal of Plaintiffs' claims. *See Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 Fed. App'x 398, 403 (6th Cir. 2014) (finding, in a situation similar to the case at bar, that "[w]hile the benefit of their bargain may have contemplated some level of confidentiality, this was not the only consideration (or even primary consideration) they received. After the settlement, [the] lawsuit was dismissed, [the defendants] avoided trial and the possibility of suffering an adverse judgment, and they were released of [plaintiff's] claims."). Thus, *Thomas* is not persuasive under the circumstances here.

Further, Defendants cite *Watie v. Fredericks of Hollywood Stores, Inc.*, CIV. A. No. 87-

---

[22] Several other cases cited by Defendants also fail to support the requested relief. *See Munoz v. Soc. Sec. Admin.*, 97 Fed. App'x 910, 914 (Fed. Cir. 2004) (finding that a breach of confidentiality was a material breach of a settlement, and remanded to the trial court for "determination of an appropriate remedy."); *Simontacchi v. Invensys, Inc.*, No. 3:05cv283, 2008 WL 141905, at *17 (W.D.N.C. Jan. 11, 2008) (finding that there was a disclosure of the terms and amount of the settlement and that the party materially breached the settlement agreement, leaving the issue of damages for trial). Additionally, Defendant cites *Norris v. Ford Motor Credit Co.*, 198 F. Supp. 2d 1070, 1073 (D. Minn. 2002), where the court stated that the party could recover $9300 in liquidated damages for breaching the confidentiality provision of the settlement agreement. While the district court awarded damages, the court did not relieve the injured party of its obligations under the settlement agreement due to the breach of the confidentiality provision. *Id.* at 1073-1074.

2118-O, 1989 WL 7902 (D. Kan. Jan. 27, 1989), where a court denied the plaintiff's motion to compel compliance with a settlement agreement where plaintiff breached a confidentiality provision. However, after the denial of her motion to enforce the settlement agreement, the plaintiff in *Watie* was permitted to pursue her underlying claims. *Id.* at *1. Accordingly, this case does not support Defendants' position that they are released from their obligations while requiring Plaintiff to dismiss her claims.[23]

The undisputed facts establish that Defendants are not entitled to be relieved of their obligations under the MRA based on Plaintiff's breach of the confidentiality provision in March 2010. Thus, the Court will deny Defendants' Motion to Enforce Settlement based on the March 2010 breach.

### B.    Plaintiff's Second Motion to Enforce Settlement Agreement

The Court will now address Plaintiff's Second Motion to Enforce Settlement.

### 1.    Enforcement of the Parties' Settlement Agreement

The parties do not dispute the essential facts present in this case, and thus the facts recited by the parties in relation to Plaintiff's Second Motion to Enforce Settlement are the same as those identified by the Court above as undisputed.

Plaintiff argues that the parties entered into an enforceable contract when Defendants' counsel offered a version of the Release, and the "signing of the [R]elease[] and delivery to

---

[23] Additionally, Defendants cite *GDL Masonry Supply, Inc. v. Lopez*, No. 05-15-01200-CV, 2016 WL 6835719 (Tex. App. Nov. 2, 2016), in which a party was excused from paying a settlement obligation where there was a breach of a confidentiality provision. However, Defendants do not explain how this case can be reconciled with the Third Circuit's command that, in the face of a material breach, the non-breaching party may not "stop performance and continue to take advantage of the contract's benefits." *Pappan Enters.*, 143 F.3d at 806; *see also Island Block Corp.*, 349 F.2d at 326.

Defendant[s] on . . . January 12, 2010 manifested her assent to Defendant's [sic] terms and constituted an acceptance." (Dkt. No. 87 at 5). Thus, Plaintiff requests that the Court enter judgment against Defendants for the settlement amount plus prejudgment interest. *Id.* Plaintiff argues that even if there had been a breach in November 2009, "Defendant[s] then reoffered the same settlement in each of its proffered Releases subsequent to that date." *Id.* at 4. As stated above, the Court agrees that the undisputed facts show that the parties entered into a binding contract on January 12, 2010 when Plaintiff executed and returned the MRA to Defendants' counsel, thus constituting acceptance of Defendants' offer.

In response to Plaintiff's motion and in contrast to their position in their Motion to Enforce Settlement, Defendants argue that the confidentiality agreement was a material term of the *oral* settlement agreement allegedly entered into in September 2009. (Dkt. No. 89 at 9). Defendants argue that "the continued negotiation of the specific terms of the Release did not constitute an offer to enter into a new settlement agreement, and in no way affected the enforceability of the settlement agreement reached on September 8, 2009, or of the Confidentiality Agreement that was a material term of that settlement." *Id.* at 10. Thus, Defendants argue that the November 2009 disclosure constituted a breach of the September 2009 *oral* settlement and forecloses any relief to Plaintiff.

As Defendants noted in their Motion to Enforce Settlement, however, the MRA contains an integration or merger clause. The continued negotiation between the parties and ultimate execution of the MRA by Plaintiff impacts the enforceability of any alleged oral settlement agreement entered into in September 2009, because the effect of the merger clause in the MRA is to supersede any prior oral settlement agreement. *See Virgin Islands Water & Power Auth.*, 51 V.I. at 1124 n. 3 (effect of merger clause "is to 'discharge[] prior agreements to the extent that they are

within its scope.'" (citing Restatement (Second) of Contracts § 209(1) (1981) and quoting Restatement (Second) of Contracts § 213(2) (1981))); *Phillip*, 66 V.I. at 628 (finding in the face of a clear merger clause that "all prior agreements relating to the sale of the property . . . were no longer binding on either party as a matter of law."). Thus, by their actions, Defendants undisputedly demonstrated that they still wished to settle—and in fact settled—the matter despite any material breach committed by Plaintiff in November 2009.

Defendants next argue that they did not "implicitly consent" to the violation of the confidentiality agreement because they immediately alerted Plaintiff's counsel to their belief that the filing in November 2009 on the public docket constituted a breach and asked her to remove the motion. (Dkt. No. 89 at 10). However, as previously discussed, Defendants continued to negotiate and offer new drafts of the MRA despite knowledge that Plaintiff's motion to withdraw would leave her First Motion to Enforce Settlement on the public docket. The fact that the parties continued to negotiate after the November 2009 breach and that Defendants reoffered the MRA is acknowledged by Defendants themselves. (*See* Dkt. No. 89 at 4 ("In December, 2009, the parties continued to negotiate the specific terms of the Release . . . . On January 12, 2010, Rivera signed the Release and returned it to Defendants.")). As the Court previously found, this demonstrates that Defendants have waived any claim that they are released from their obligations under the MRA due to the November 2009 breach.

Finally, Defendants argue that even if they had continued to negotiate and make new offers after the November 2009 breach, Plaintiff again breached in March 2010. (Dkt. No. 89 at 11). But as the Court has found, while Defendants may be entitled to damages, they are not entitled to accept Plaintiff's performance in the dismissal of her legal claims, while being relieved of their obligation to pay the settlement proceeds.

The undisputed facts demonstrate that the parties entered into a binding settlement agreement on January 12, 2010 wherein the parties agreed to the dismissal of Plaintiff's claims in exchange for a sum certain. Defendants have not presented any legitimate basis for concluding that they should be relieved of their obligation to pay under the agreement. Thus, the Court will enter judgment in favor of Plaintiff for the settlement amount.

### 2.     Mediation Privilege

Defendants also highlight Plaintiff's alleged disclosure of "privileged and confidential communications allegedly made during the mediation process" in her Second Motion to Enforce Settlement. (Dkt. No. 89 at 18). Given this disclosure, Defendants suggest that "the Court should decline to consider the March 23 Motion to Enforce and should strike the portions of that motion improperly disclosing privileged communications with the Mediator from the record and personally sanction Attorney Rohn." *Id.*

As a preliminary matter, the Court rejects Defendants' suggestion to decline consideration of Plaintiff's Second Motion to Enforce. Further as discussed earlier, the Court has overruled Defendants' mediation privilege objections as they pertain to the undisputed facts referenced in section III.A.1 above. With regard to those disclosures, the Court will deny Defendants' request to strike.

If Defendants are seeking sanctions against Plaintiff's counsel for disclosure—prior to waiver of the mediation privilege—of any other material covered by the privilege, and/or seeking to have other disclosures stricken from the record, the Court finds that it is more appropriate for Defendants to file a motion stating the legal basis for sanctions, and/or for striking material from the record rather than requesting such relief in response to Plaintiff's motion. Moreover, in light of the Court's ruling herein that overrules certain mediation privilege objections, any motion filed

by Defendants must identify with specificity the particular disclosures for which sanctions are sought and/or which Defendants seek to strike from the record, and the legal authorities in support thereof.

### 3.    Prejudgment Interest

Plaintiff requests that, in addition to entering judgment against Defendants, the Court should include pre-judgment interest. (Dkt. No. 87 at 5).

Virgin Islands law provides a 9% per annum statutory rate of prejudgment interest. V.I. Code Ann. tit. 11, § 951(a); *VF Dev. v. Greaves*, Civil No. 2009-138, 2011 WL 4500295, at *4 (D.V.I. Sept. 27, 2011) ("In the Virgin Islands, an award of prejudgment interest is permitted on 'all monies which have become due.'" (quoting V.I. Code Ann. tit. 11, § 951(a))); *see also Elbrecht v. Carambola Partners, LLC*, No. 1:08-cv-00021, 2010 WL 2813614, at *7 (D.V.I. July 16, 2010) ("On a breach of contract claim, prejudgment interest accrues at the rate of interest specified in the contract, or if no rate is specified, at a statutory rate of 9%.").[24] An award of prejudgment interest is authorized "only where the amount due is in money and therefore easily ascertainable." *Antilles*

---

[24] The parties agree that Virgin Islands law governs this dispute (Dkt. Nos. 140 at 6; 143 at 2). Thus, in calculating pre-judgment interest the Court shall apply Virgin Islands law. *See Simon v. Block*, Civil Action No. 11-5412, 2014 U.S. Dist. LEXIS 132416, at *20 (E.D. Pa. Sept. 22, 2014) (applying Pennsylvania law of prejudgment interest because "[t]he question of whether a settlement occurred is governed by state law. . . . The motion to enforce settlement is in the nature of a contract action, and it is undisputed that Pennsylvania law applies to this dispute." (citing *Tiernan v. DeVoe*, 923 F.2d 1024, 1032-33 (3d Cir. 1991) and *Bankers Trust Co. v. Bethlehem Steel Corp*., 752 F.2d 874, 882 (3d Cir. 1984))); *United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d 446, 450-451, 457 (S.D.N.Y. 2018) (applying state law governing prejudgment interest on a settlement in a federal question matter, stating that in the context of "a federal court's interpretation of federal settlement agreements, a number of district court cases examining this question have concluded that such disputes are quintessentially of contractual interpretation and wholly governed by state law."); *see also In re Mortg. Lenders Network USA, Inc.*, 406 B.R. 213, 247 (Bankr. D. Del. 2009) ("if the right to recovery arises under federal law, federal law also governs the availability of prejudgment interest; similarly, if the right to recovery arises under state law, state law also governs the availability of prejudgment interest" (citing *Jarvis v. Johnson,* 668 F.2d 740 (3d Cir.1982))).

*Ins. v. James*, 30 V.I. 230, 256 (D.V.I. 1994) (quoting *Remole v. Sullivan, AIA*, 20 V.I. 434, 438 (V.I. Terr. Ct.1984)) (internal quotation marks omitted). Prejudgment interest may be awarded in the context of settlement agreements. *See Nicholas*, 2007 WL 4811566, at *6 (citing *Michael J. Benenson Assocs. v. Orthopedic Network*, 54 Fed. App'x 33 (3d Cir. 2002)); *VF Dev. v. Greaves*, Civil No. 2009-138, 2011 WL 4500295, at *4-5 (D.V.I. Sept. 27, 2011); *Anthony v. Mazda Motor of Am.*, 49 V.I. 560, 564-67 (D.V.I. 2007), *aff'd sub nom. Anthony v. Abbott*, 304 Fed. App'x 66 (3d Cir. 2008).

Most courts in the Virgin Islands have stated that awarding prejudgment interest is within the discretion of the Court. *See, e.g.*, *Williams v. Edwards*, No. ST-12-CV-175, 2017 WL 3124472, at *3 (V.I. Super. Ct. July 12, 2017); *Bank of Nova Scotia v. Four Winds Plaza Corp.*, 56 V.I. 45, 56 (V.I. Super. Ct. 2012). However, the Third Circuit has interpreted V.I. Code Ann. tit. 11, § 951(a) as imposing a mandatory prejudgment interest on liquidated sums. *Addie v. Kjaer*, 836 F.3d 251, 255, 265 n.6 (3d Cir. 2016) ("Other decisions of lower courts in the Virgin Islands have stated that awarding prejudgment interest is discretionary. . . . We are not bound by those decisions, and we find them . . . mistaken."). In the absence of a Virgin Islands Supreme Court ruling contradicting such an interpretation, this Court is bound by the direction of the Third Circuit.

The amount due in this matter is easily ascertainable as it is clearly articulated in the executed MRA. However, the MRA does not state the day on which Defendants were required to make payment. Several Virgin Islands courts have stated that in the absence of a date, the calculation of prejudgment interest may accrue from the date a party has refused pay the money owed. *See Rasmussen v. Dalmida*, 50 V.I. 1032, 1039 (D.V.I. Dec. 29, 2008) ("[T]he right to interest upon money owing upon contract is a legal right which begins at the time payment is withheld after it has been the duty of the debtor to make such payment." (quoting *Brisbin v.*

*Superior Valve Co.,* 398 F.3d 279, 293 (3d Cir. 2005)) (internal quotations omitted)); *Bolide Tech.*

*Grp. v. Alert #1 Int'l, Inc.*, No. ST-11-CV-394, 2013 WL 12460443, at *4 (V.I. Super. Ct. May 7,

2013) (calculating prejudgment interest from the day after the defendant had received goods and

thereafter withheld payment). The Court finds these cases instructive given the lack of a time

period expressly stated in the MRA. Accordingly, prejudgment interest shall be calculated from

January 25, 2010 when Defendants stated that they were refusing to make payment under the

settlement agreement. *See Rasmussen*, 50 V.I. at 1040 ("[Defendant] repudiated the contract on

February 28, 2006. That date is therefore the start date for the computation of prejudgment

interest.").[25]

## IV.    CONCLUSION

The terms of the MRA will be enforced as written. Defendants are not released from their

obligation to pay the settlement amount to which they agreed in the MRA. The parties are also

required to abide by the remaining contractual obligations as set forth in the MRA. The Court will

enter judgment in favor of Plaintiff in the amount specified in the MRA executed by Plaintiff on

January 12, 2010 plus prejudgment interest calculated at the statutory rate of 9% per annum starting

on January 25, 2010.

An appropriate Order accompanies this Memorandum Opinion.

Date:   June 1, 2021                          _____/s/_____
                                              WILMA A. LEWIS
                                              District Judge

---

[25] In her Motion, Plaintiff also requests costs and fees "incurred as a result of the breach of the
Settlement Agreement" in the amount of $3,800. (Dkt. No. 87 at 6). Plaintiff references an
"Affirmation of Plaintiff" supporting her request for costs and fees, but there is no such
Affirmation on the docket. Without support for her claim for costs and fees, the Court is unable to
evaluate Plaintiff's request. Thus, Plaintiff's request for costs and fees associated with her Second
Motion to Enforce Settlement will be denied without prejudice.